IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

ELIZABETH BLAIR GRAVES by and through
her Mother LETICIA VAILES,

    Plaintiff,

v.                                                             No. 1:12-cv-01185-JDB-egb

QUALITEST PHARMACEUTICALS, *et al.*,

    Defendants.

---

ORDER RESCINDING CONSENT ORDER OF DISMISSAL,
ADOPTING REPORT AND RECOMMENDATION,
AND GRANTING PLAINTIFF'S REQUEST FOR REMAND

---

Before the Court are Defendants, Vintage Pharmaceuticals LLC d/b/a Qualitest Pharmaceuticals ("Vintage") and Endo Pharmaceuticals' ("Endo"), objections to Magistrate Judge Ed Bryant's report and recommendation that this action be remanded to state court based on lack of complete diversity between the parties. The Magistrate Judge found that Defendants, Rachel Boylan and Sonya Deakins, both residents of Tennessee, were not fraudulently joined and that the Court consequently lacked subject matter jurisdiction to entertain this lawsuit. Vintage and Endo contend that there is no reasonable basis to hold Boylan and Deakins liable for the injuries detailed in Plaintiff, Elizabeth Blair Graves', complaint and accordingly assert that these two defendants were fraudulently joined. Based on the following reasons, the Court adopts the report and recommendation and finds that the Court does not have subject matter jurisdiction over the case.

I. FACTUAL AND PROCEDURAL BACKGROUND

1

On July 27, 2012, Graves, by and through her mother Leticia Vailes, filed a complaint in Gibson County (Tennessee) Circuit Court against Vintage, Endo, Super D Drugs Acquisitions Co. a/k/a Super D Express Rx ("Super D"), Boylan and Deakins (both pharmacists employed by Super D), and John Doe Packaging Co., seeking damages stemming from an incorrectly packaged oral contraceptive that was subject to recall. On August 16, 2012, Vintage and Endo filed a notice of removal, claiming diversity jurisdiction and asserting that Boylan and Deakins had been fraudulently joined.

## II. STANDARD OF REVIEW

According to 28 U.S.C. § 636(b)(1) and Rule 72(b)(3) of the Federal Rules of Civil Procedure, a district judge ruling on an objection to a magistrate judge's recommendation must apply a de novo standard of review. "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). The Court has reviewed the Defendants' objections and addresses them below.

## III. ANALYSIS

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675, 128 L. Ed. 2d 391 (1994). By statute, federal courts are permitted to hear cases through diversity jurisdiction where the amount in controversy exceeds $75,000 and there is complete diversity as to each defendant named in the complaint. 28 U.S.C. § 1332(a). If complete diversity does not exist, the court lacks subject matter jurisdiction and must remand the action to state court. See Coyne v. Am. Tobacco Co., 183 F.3d 488, 493 (6th Cir. 1999). However, if a defendant can establish that a plaintiff has fraudulently joined a non-

diverse defendant, removal is permissible. Id. In order to prove fraudulent joinder, "the removing party must present sufficient evidence that a plaintiff could not have established a cause of action against non-diverse defendants under state law." Id. Whether a court has subject matter jurisdiction over an action is determined at the time of removal, Pullman Co. v. Jenkins, 305 U.S. 534, 537, 59 S. Ct. 347, 349, 83 L. Ed. 334 (1939), and the removing party bears the burden of demonstrating that subject matter jurisdiction exists. Harnden v. Jayco, Inc., 496 F.3d 579, 581 (6th Cir. 2007).

The Defendants present three theories as to why Tennessee state law does not impose liability on the pharmacists: (1) there is no post-sale duty to warn; (2) the "Tennessee Middleman Statute," Tenn. Code Ann. § 29-28-106, shields the pharmacists from liability; and (3) Plaintiff failed to allege that Boylan and Deakins personally participated in tortious conduct. However, based on the record before it, the Court cannot conclude that there is "no reasonable basis for predicting that the state law might impose liability" on the individual defendants. Coyne, 183 F.3d at 493 (citations omitted). Thus, the Court finds that the Defendants have not met their burden in establishing fraudulent joinder.

As to a pharmacist's post-sale duty to warn in Tennessee, the Court finds that such a duty has not been clearly delineated and thus, cannot find with certainty that the duty does not exist. The Defendants cite to Yarbrough v. Actavis Totowa, LLC, No. 4:10-cv-129, 2010 WL 3604674 (S.D. Ga. Sept. 13, 2010), for the contention that pharmacists are not under a post-sale obligation to warn patients of defective medication. Id. at *4 (holding that pharmacy defendants were fraudulently joined where the plaintiffs failed to allege that the defendants had "actual or constructive knowledge of the allegedly defective [medication] at the time of sale" or that the pharmacy voluntarily instituted a product recall which would have created a duty to inform a

3

customer.) This case does not involve Tennessee law and is therefore only persuasive authority. Alternatively, Tennessee courts have recognized a pharmacist's duty to warn in different contexts. See, e.g., Pittman v. Upjohn Co., 890 S.W.2d 425, 435 (Tenn. 1994); Dooley v. Everett, 805 S.W.2d 380, 384 (Tenn. Ct. App. 1990). In Pittman, the Tennessee Supreme Court determined that when a patient was unaware of a drug's potential dangers, the pharmacist had a duty to warn the patient of the complications that could arise from use. Pittman, 890 S.W.2d at 435. The Dooley court reversed the trial court's grant of summary judgment on the issue of whether a pharmacist had a duty to warn of potential drug interactions, finding that pharmacists owed a duty to "act with due, ordinary, care and diligence in compounding and selling drugs." Dooley, 805 S.W.2d at 384. Based on Tennessee courts' willingness to impose a duty on pharmacists to warn of medication risks, the Court cannot conclude with certainty that Boylan and Deakins did not owe such a duty in the instant case.

Next, the Court considers whether TCA § 29-28-106 shields pharmacists from liability. The Court recognizes that the injury complained of in this action is one for wrongful conception or pregnancy. See Smith v. Gore, 728 S.W.2d 738, 741 (Tenn. 1987). Therefore, the Plaintiff's alleged claim originated when she conceived her child. The Complaint does not specify when the child was conceived, only that the recall for the oral contraceptives was issued on September 15, 2011. Therefore, depending on the date of conception, two different versions of the Tennessee statute could apply in this case. See Compiler's Notes, current Tenn. Code Ann. § 29-28-106 ("the act, which rewrote this section, shall apply to all liability actions for injuries, deaths and losses covered by this act which accrue on or after October 1, 2011"). If conception occurred between September 15, 2011 and September 30, 2011, the earlier version of the statute applied. If conception occurred on or after October 1, 2011, the current version controlled. Because the

previous version of the statute could apply, and neither party has presented evidence otherwise, the Court finds that there is a possibility that § 29-28-106 might not shield the pharmacists from liability.

> The pre-October, 2011 version of TCA § 29-28-106 stated that
>
> (a) No "product liability action," as defined in § 29-28-102(6), shall be commenced or maintained against any seller when the product is acquired and sold by the seller in a sealed container and/or when the product is acquired and sold by the seller under circumstances in which the seller is afforded no reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition. The provisions of the first sentence of this subsection shall not apply to:
>
> (1) Actions based upon a breach of warranty, express or implied, as defined by title 47, chapter 2; or
>
> (2) Actions where the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee and where service cannot be secured by the long-arm statutes of Tennessee; or
>
> (3) Actions where the manufacturer has been judicially declared insolvent.
>
> (b) No "product liability action," as defined in § 29-28-102(6), when based on the doctrine of strict liability in tort, shall be commenced or maintained against any seller of a product which is alleged to contain or possess a defective condition unreasonably dangerous to the buyer, user or consumer unless the seller is also the manufacturer of the product or the manufacturer of the part thereof claimed to be defective, or unless the manufacturer of the product or part in question shall not be subject to service of process in the state of Tennessee or service cannot be secured by the long-arm statutes of Tennessee or unless such manufacturer has been judicially declared insolvent.

Tenn. Code Ann. § 29-28-106 (pre-October 1, 2011 version). The Magistrate Judge concluded that the statute did not apply to the current action, as the "Plaintiff's claims against the pharmacists appears to be one of simple common law negligence, rather than a product liability claim." (Report and Recommendation, D.E. 23, pg. 6.) Essentially, Magistrate Judge Bryant determined that because the contentions against Boylan and Deakins were a failure to warn

5

Graves of the faulty packaging, and not the manufacture of or contribution to the defective product, those claims did not constitute a product liability action under Tenn Code Ann. § 29-28-102. However, the definition of "product liability action" is much broader than the Magistrate Judge's interpretation. The Tennessee Code clearly defined product liability actions as

> all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly testing, service, *warning*, *instruction*, marketing, *packaging or labeling* of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; *negligence*; breach of warranty, express or implied; breach of or *failure to discharge a duty to warn or instruct*, whether *negligent*, or innocent; misrepresentation; concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

Tenn. Code Ann. § 29-28-102(6) (emphasis added). This definition was present in both the previous and current versions of T.C.A. § 29-28-106. Under this definition, the Tennessee legislature intended to include negligent failure to warn or instruct, the assertions against Boylan and Deakins, as potential claims. The pharmacists' alleged failure to warn about the mislabeling of oral contraceptives placed these contentions within the definition of a "product liability action." Accordingly the Court finds that the assertions against the pharmacists are within the parameters of T.C.A. § 29-28-102(6).

However, Magistrate Judge Bryant further found that "even if this were a product liability claim, a Tennessee Court might find that the [middleman] statute did not apply under the facts of this case." (Report and Recommendation, pg. 6 n. 1.) Judge Bryant's analysis considered the earlier version of T.C.A. § 29-28-106 and supporting caselaw. The report and recommendation cited Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 898-99 (Tenn. 2011), which found that sellers may potentially be liable for a product liability action when there was an opportunity to inspect the product "in such a manner which would or should, in the exercise of reasonable care,

6

reveal the existence of the defective condition." Id. at 899. The basis for the Lind court's reasoning originated from the language of the earlier version of § 29-28-106 relating to non-strict liability actions which provided that a seller was not protected when it had a "reasonable opportunity to inspect the product in such a manner which would or should, in the exercise of reasonable care, reveal the existence of the defective condition." Tenn. Code Ann. § 29-28-106 (pre-October 1, 2011 version). Here, neither party has provided the Court with any evidence as to how the oral contraceptives at issue were packaged. Courts have held that even when a product is packaged by a manufacturer, a seller can be held liable when it has the opportunity to inspect the product. See Gentry v. Hershey Co., 687 F. Supp. 2d 711, 721 (M.D. Tenn. 2010) (finding that a genuine issue of material fact existed as to whether a store had a reasonable opportunity to inspect a peppermint pattie that had been infested with bugs). Here, because there is a lack of information as to how the oral contraceptives were packaged or whether there was an opportunity to inspect, the Court cannot conclude that the pre-October 2011 Tenn. Code Ann. § 29-28-106 shielded the pharmacists from liability. As the Court cannot determine if the earlier or current version of the statute controlled this case, it cannot conclusively find that a state court would not find the pharmacists liable.

Last, the Court considers the Defendants' argument that the Plaintiff failed to allege that Boylan and Deakins personally participated in the tortious conduct. However, this contention is without merit, as Plaintiff expressly alleged that Boylan and Deakins personally failed to notify her of the medication recall. (Compl. ¶¶ 8, 9). None of the three theories proffered by the Defendants conclusively shield Boylan and Deakins from liability and therefore, under the pleadings as presented, they have not been fraudulently joined. As diversity is lacking, the Court does not have subject matter jurisdiction over this lawsuit. Since jurisdiction is a threshold issue

that is determined at the time of removal, Pullman, 305 U.S. at 537, 59 S. Ct. at 349, the Court did not have authority to enter the consent order of dismissal as to Super D, Boylan, and Deakins. See Special Investments, Inc. v. Aero Air, Inc., 360 F.3d 989, 995 (9th Cir, 2004) (ordering the district court to vacate a dismissal that was entered prior to the district court's determination that it lacked subject matter jurisdiction). Resultantly, the Court RESCINDS the consent order of dismissal (D.E. 24) and in accordance with its adoption of the report and recommendation, REMANDS this lawsuit to state court for further proceedings.

    IT IS SO ORDERED this 21st day of June, 2013.

                                          s/ J. DANIEL BREEN
                                          UNITED STATES DISTRICT JUDGE